UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BROOKDALE SENIOR LIVING, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 14-098-DCR |
| V. | ) ) | |
| PAUL S. CAUDILL, as Administrator of the Estate of June Holliday, Deceased, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Paul S. Caudill is the Administrator of the Estate of June Holliday. This matter is pending for consideration of Caudill's motion to dismiss this action. Conversely, the plaintiffs have moved the Court to compel arbitration and enjoin Caudill from continuing his state court action against them. [Record Nos. 4, 6] For the reasons set forth below, the Court will compel arbitration and deny the defendant's motion to dismiss. Additionally, the Court will enjoin Caudill from pursuing the underlying state action.

**I.**

On November 19, 2013, Caudill filed an action in the Fayette Circuit Court regarding the care and treatment of June Holliday at Richmond Place Rehabilitation and Health Center. [Record No. 1-2] On behalf of Holliday's estate, Caudill alleged negligence, medical negligence, corporate negligence, violation of a long term care resident's rights, and wrongful death against several entities and individuals. [Record No. 1-2] The defendants

named in that action include: Brookdale Senior Living, Inc.; BLC Lexington SNF, LLC d/b/a Richmond Place Rehabilitation and Health Center; American Retirement Corporation; Richmond Place Administrator Jamie Gitzinger; Richmond Place Director of Nursing Michele Combs; Richmond Place Assistant Director of Nursing Karen Hatfield; Richmond Place Executive Director Carol Brinegar; Brookdale Senior Living, Inc. Regional Clinical Nursing Consultant; and Brookdale Senior Living, Inc. Division Vice President Fred Ewing (collectively, "the state court defendants"). [*Id.*]

The state court defendants asserted in their Answer that the claims are subject to a binding alternative dispute resolution agreement contained in Holliday's residency agreement. The residency agreement was signed on May 16, 2012 – the date of Mrs. Holliday's admission into the nursing home – by Mrs. Holliday's son, Caudill, acting as her attorney-in-fact. [Record No. 1-1] The arbitration provision states, in relevant part:

> Any and all claims or controversies arising out of or in any way relating to this Agreement or the Resident's stay at the company, excluding any action for eviction, including disputes regarding the making, execution, validity, enforceability, voidability, unconscionability, severability, scope, interpretation, waiver, duress or any other defense to enforceability of this Agreement or this Arbitration Provision, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law. The parties to this Agreement further understand that a jury will **not** decide their case.

[Record No. 1-1 (emphasis in original).]

Three of the nursing home state court defendants (Brookdale Senior Living Inc., BLC Lexington SNF, LLC, and American Retirement Corporation) filed this action under the

Federal Arbitration Act ("FAA"), seeking to compel arbitration and enjoin Caudill from pursuing his claims against them in state court. Caudill then moved to dismiss the action, arguing that this Court lacks subject matter jurisdiction, that the plaintiffs failed to join an indispensable party, and that the arbitration agreement is unenforceable for a variety of reasons.

## II.

### A. Rule 12(b)(1)

Federal district courts have original jurisdiction over civil actions between citizens of different states if the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). If lack of subject-matter jurisdiction is raised in a motion to dismiss, the plaintiff "bears the burden of proving jurisdiction . . . to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n*, 287 F.3d 568, 573 (6th Cir. 2002). However, the plaintiff will "survive the motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." *Id.* (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)).

Motions to dismiss based on Rule 12(b)(1) "generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleading." *Id.* Thus, the Court must accept the "allegations in the complaint as true" when reviewing a facial attack, and "[i]f those allegations establish federal claims, jurisdiction exists." *Id.* A factual attack, on the other hand, is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United*

*States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). When considering a factual attack, there is no presumption of truthfulness applied to the allegations. Instead, the Court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek*, 491 F.3d at 330.

**B. Rule 12(b)(6)**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

### III.

**A. Subject Matter Jurisdiction**

Under the FAA, a district court has jurisdiction over a petition to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement. 9 U.S.C. § 4. That is, the FAA "bestow[s] no

federal jurisdiction but rather require[s] an independent jurisdictional basis' [for access to a federal forum] over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (quoting *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008) (internal quotation marks omitted)); *see also Moses. H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983). Thus, § 4 of the FAA neither expands nor contracts federal subject matter jurisdiction. *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 747 n.7 (8th Cir. 1986). A petitioner proceeding under § 4 must assert an independent source of subject matter jurisdiction. Here, the plaintiffs assert that the Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1332, the Court's diversity jurisdiction.

Caudill first argues that the Court lacks subject matter jurisdiction because complete diversity is lacking. Yet, diversity exists on the face of the federal Complaint. Plaintiff Brookdale Senior Living, Inc., is a corporation formed under the laws of Delaware with its principal place of business in Tennessee. [Record No. 1, p. 7] Plaintiff BLC Lexington SNF, LLC, is a limited liability company formed under the laws of Delaware with its principal place of business in Tennessee. [*Id.*] And Plaintiff American Retirement Corporation, is a corporation formed under the laws of Tennessee with its principal place of business in Tennesee. [*Id.*] Conversely, Caudill is a citizen of the Commonwealth of Kentucky. [*Id.*]

Regarding the amount in controversy, "courts uniformly appl[y] a *limited* 'look through' approach, determining whether the value at stake in the arbitration being sought in the federal action could exceed $75,000, regardless [of] whether the claim(s) to be arbitrated were part of a broader parallel state court action in which the total amount in controversy

might be greater." *Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 486-87 (8th Cir. 2010) (emphasis added) (internal quotation marks omitted). The claims that the plaintiffs seek to arbitrate are for actual and punitive damages related to alleged substandard medical care provided to Holliday while residing at the nursing home. [*See* Record No. 1.] The plaintiffs have adequately shown that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

Caudill does not challenge that diversity jurisdiction exists based on the Complaint itself. Rather, he contends that the Court lacks subject matter jurisdiction because the Court should look through to the underlying controversy (which includes non-diverse defendants) to find that diversity jurisdiction is defeated. Additionally, Caudill argues that the plaintiffs have failed to join indispensable parties (*i.e.*, the nursing home administrators that were sued as joint tortfeasors in the state court action) that would destroy diversity.

### 1. "Look Through" Approach

Caudill contends that the Court lacks subject matter jurisdiction because of the Supreme Court's decision in *Vaden v. Discover Bank*, 556 U.S. 49 (2009). The plaintiffs counter that *Vaden's* holdings are inapplicable to cases premised on diversity jurisdiction. In *Vaden*, a credit card company, Discover, sued a cardholder for past-due charges in state court. *Id.* at 53. The cardholder asserted state law counterclaims that Discover considered preempted by federal banking law. *Id*. Discover also filed a § 4 petition in federal district court to compel the arbitration of the counterclaims. *Id*. at 54. Tracking the language of 18 U.S.C. § 1331, the Court held that a federal court should "look through" a § 4 petition to determine whether it is predicated on a controversy that "arises under" federal law. *Id.* at 66.

The *Vaden* Court found that, when looking through to the whole controversy between the parties, the action did not qualify for federal-court adjudication because there was no federal question. Thus, the Supreme Court held that the district court lacked subject matter jurisdiction. *Id.* at 72.

Although Caudill asserts that the Supreme Court's conclusion in *Vaden* "appl[ies] to the analysis of diversity cases as well as [] federal question cases," he provides no support for this contention.[1] [Record No. 4-1, p. 14] Courts confronting the issue have consistently rejected the "look through" analysis when considering whether the parties to a controversy are completely diverse. *See, e.g. Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 490-91 (8th Cir. 2010). In *Northport*, the Eighth Circuit considered that the Supreme Court "carefully limited its statement of the issues and holding to federal question jurisdiction" and "cited the circuit court cases creating the federal question conflict but did not cite any of the circuit court § 4 diversity cases." *Northport,* 605 F.3d at 490-91. The *Northport* Court was critical of a broad reading of *Vaden*, noting that the argument that *Vaden* is equally applicable to diversity cases "distorted the Supreme Court's decision." *Id.* at 488.

This Court is persuaded by the Eighth Circuit's approach in *Northport*. *See Sun Healthcare Group, Inc. v. Dowdy,* No. 5:13-CV-169, 2014 U.S. Dist. LEXIS 24285, *11

---

[1] As noted by Judge Caldwell when considering a similar argument, Caudill's argument is not totally lacking in merit. Some of the *Vaden* Court's broader statements could be read in the way Caudill advances. *See Vaden*, 556 U.S. at 66. ("[W]e read § 4 to convey that a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire actual 'controversy between the parties,' as they have framed it, could be litigated in federal court.") However, the conclusion in *Vaden* is narrowed to federal question jurisdiction, and the issue was whether the

(W.D. Ky. Feb. 26, 2014) (following the "well-reasoned" approach of the Eighth Circuit in rejecting a similar argument). Further, other courts within this Circuit have found that *Vaden* is limited to cases involving federal question jurisdiction. *See Brookdale Senior Living v. Teresa Stacy*, No. 5:13-290-KKC, 2014 U.S. Dist. LEXIS 84460 (E.D. Ky. June 20, 2014) (finding that *Vaden* does not apply to a diversity action under the same facts); *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 953 (N.D. Ohio 2009) ("[T]he *Vaden* Court explicitly limited its holding to cases where the controversy underlying the § 4 petition involves federal-question jurisdiction."). As a result, the Court will not "look through" to the underlying state court action to find that diversity jurisdiction is defeated.

### 2. Failure to Join – Indispensable Party

The defendant also argues that this Court lacks jurisdiction because certain administrators who are named as defendants in the underlying state court action are indispensable parties to the current controversy. "As with any federal action, diversity of citizenship is determined by reference to the parties named in the proceeding before the district court, as well as any indispensable parties who must be joined pursuant to Rule 19." *Northport,* 605 F.3d at 486 (quoting *Doctor's Assocs. v. Distajo,* 66 F.3d 438, 445 (2d Cir. Conn. 1995)). Under Rule 19, the Court must first look to whether the individual defendants are necessary parties. *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001) A party is necessary if:

> (A) in that person's absence, complete relief cannot be accorded among those already parties; or

---

controversy "arises under" federal law. *See id.* As a whole, it is clear that *Vaden* does not extend beyond federal question jurisdiction.

> (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
>> (i) as a practical matter, impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

A person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party. *Id*. at 204. Because the nursing home administrators have been sued in the underlying state-court action, they have an interest in the controversy and their absence from this matter results in claims left undecided. Thus, the Court will assume that the state court defendants who are not joined in this action are necessary parties. *See Shields v. Barrow*, 58 U.S. 130, 139 (1854) (a necessary party is one having an interest in the controversy, and whose absence would result in some aspect of the suit being left outstanding).

Because the nursing home administrators would destroy diversity jurisdiction, the question becomes whether they are indispensable for the purposes of Rule 19. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968); *PaineWebber*, 276 F.3d at 200. The factors to consider regarding whether a party is indispensable include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:

        (A)     protective provisions in the judgment;

        (B)     shaping the relief; or

        (C)     other measures;

   (3)     whether a judgment rendered in the person's absence would be adequate; and

   (4)     whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The Court's focus when weighing these factors is equity and good conscience. *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008).

Looking to the first factor, Caudill asserts that he will be prejudiced by having to pursue separate causes of action in both state and federal court. [*See* Record No. 4-1, p. 19.] Yet the risk of having to proceed simultaneously in both courts (or in more than one arbitration proceeding) is the result of Caudill's decision to file suit in state court rather than demand arbitration under the agreement. *PaineWebber*, 276 F.3d at 200-06; *see also GGNSC Vanceburg, LLC v. Hanley,* No. 13-106-HRW, 2014 U.S. Dist. LEXIS 42355, *11 (E.D. Ky. Mar. 28, 2014). As the Sixth Circuit has noted, "the possibility of piecemeal litigation is an inevitable consequence of the FAA's policy favoring arbitration." *PaineWebber*, 276 F.3d at 203. Likewise, the potential of this Court reaching a conflicting conclusion when interpreting the arbitration agreement does not present the degree of prejudice necessary to find the administrative defendants indispensable to this action. *See id.* Rather, this possibility exists because of Caudill's decision to name the corporate defendants and administrative defendants in the state court action. *Hanley*, 2014 U.S. Dist. LEXIS 42355, at * 12.

The final factor weighs in Caudill's favor. [*See* Record No. 5, p. 8.] The plaintiffs admit that they could seek to compel arbitration in the state court action. Thus, they have an adequate remedy if the action were dismissed for nonjoinder. [*Id.*] Yet "the potential existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice." *PaineWebber*, 276 F.3d at 205. Other courts within this Circuit have found that a nursing home administrator is not an indispensable party by virtue of being a party to the underlying state-court action.[2] *GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 U.S. Dist. LEXIS 178136, *3-4 (W.D. Ky. Dec. 18, 2013); *see also Stacy*, 2014 U.S. Dist. LEXIS 84460, at *16-17. And "every circuit to consider the issue[] has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration." *Northport*, 605 F.3d at 491 (*citing Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 393-94 (5th Cir. 2006)); *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83 (4th Cir. 2005); and *Paine Webber*, 276 F.3d at 202-06.

After balancing the factors of Rule 19(b) and considering the Sixth Circuit's rejection of nearly-identical arguments, the Court finds that the state court administrators are not indispensable parties. Caudill's motion to dismiss will be denied.

---

[2]Although Caudill spends a considerable amount of time arguing about the merits of his claims against the nursing home administrators, the Court need not address these assertions because those individuals are not parties to this action. [Record No. 4-1, pp. 9-11] In addition, Caudill's discussion of *Cytec Industries, Inc. v. Powell*, 630 F. Supp. 2d 580 (N.D.W. Va. 2009), is not persuasive because the Sixth Circuit has spoken clearly regarding Caudill's current arguments.

### B. Abstention

Alternatively, Caudill argues that should the Court should abstain from exercising jurisdiction under the abstention doctrine announced in *Colorado River Water Conservation District, et al. v. United States*, 424 U.S. 800, 813 (1976). The factors to consider when deciding whether to abstain from exercising jurisdiction under *Colorado River* include:

(1) whether the state court has assumed jurisdiction over any res or property;

(2) whether the federal forum is less convenient to the parties;

(3) avoidance of piecemeal litigation;

(4) the order in which jurisdiction was obtained;

(5) whether the source of governing law is state or federal;

(6) the adequacy of the state court action to protect the federal plaintiff's rights;

(7) the relative progress of the state and federal proceedings; and

(8) the presence or absence of concurrent jurisdiction.

*PaineWebber*, 276 F.3d at 206 (citing *Romine v. Compuserve Corp.*, 160 F.3d 337, 340-41 (6th Cir. 1998)).

The Court begins its analysis with the most important of these factors, which asks "whether there is a clear federal policy evinc[ing] . . . the avoidance of piecemeal adjudication found within the statutory scheme at issue." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (internal quotation marks omitted). The Sixth Circuit has answered this question in the negative: "[i]n the case of the [FAA], there most clearly is not such a policy." *Id.* at 467. This is due in part to the strong federal policy favoring arbitration, "even where the result would be the possibly inefficient

maintenance of separate proceedings in different forums." *Id*. at 467-68. Thus, the most important factor counsels in favor of exercising jurisdiction.

Other factors counsel against abstention. There is no indication that the state court has assumed jurisdiction over any res or property, nor is there any indication that the federal forum is less convenient to the parties than the Kentucky state court. *See Stacy*, 2014 U.S. Dist. LEXIS 84460, at *19 (where the state court has not assumed jurisdiction over property and both courts are geographically convenient, these factors go against abstention). The remaining factors are mixed. Factors four, seven, and eight slightly favor abstention. Caudill filed the state court action on November 19, 2013, and the plaintiffs in this case filed the action to compel on March 13, 2014. [Record No. 1] And although the state court action was filed first, both matters are still in the pleading stage. [Record No. 4-1, p. 24] The fifth factor also cuts against abstention. *See PaineWebber*, 276 F.3d at 208-09 (where the FAA is the basis of interpreting the disputed arbitration agreement this factor weighs in favor of exercising jurisdiction).

The Court is also mindful that abstention "is the exception, not the rule." *Colorado River Water*, 424 U.S. at 813. "The decision to dismiss a federal action because of a parallel state-court action rests on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Great Earth*, 288 F.3d at 886 (internal quotation marks omitted). The most important factor in this case counsels in favor of exercising jurisdiction. On balance, the other factors are not of such a heavy weight to demand abstention.

**IV**.

Having settled the threshold questions of jurisdiction and abstention, the Court turns to the merits of the plaintiffs' claims. The plaintiffs have moved to compel arbitration under the agreement. Under the FAA, arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 595 (6th Cir. 1995) (internal quotation marks omitted) (citing *Moses H. Cone*, 460 U.S. at 24).

When considering a motion to compel arbitration, the Court considers: (i) whether the parties agreed to arbitrate the claims; (ii) the scope of the arbitration agreement; (iii) whether there are any federal statutory claims that are non-arbitrable; and (iv) whether to stay any proceedings not subject to arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Although Kentucky law governs the interpretation of the arbitration agreement, the "liberal federal policy favoring arbitration agreements" must be taken into account even when state-law issues are presented. *Moses H. Cone,* 460 U.S. at 24. Any doubts regarding the parties' intentions should be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

**A.** **Agreement to Arbitrate**

The arbitration provision in issue states that "any and all claims or controversies arising out of, or in any way relating to, this Agreement," which includes any "disputes

regarding the making, execution, validity, enforceability, voidability, unconscionability, severability, scope, interpretation, waiver duress, or any other defense," are subject to binding arbitration. [Record No. 1-1] The agreement states in a separate provision that the parties "understand that a jury will not decide their case." [*Id.*] Defendant Caudill – acting under Holliday's grant of a general power-of-attorney – signed the residency agreement on behalf of Holliday. [*See* Record No. 6-1.]

Caudill asserts that the parties did not agree to arbitrate any claims. The main crux of his argument is that he lacked the authority under his power-of-attorney agreement to bind his mother's estate to arbitration. [Record No. 7, p. 4] He relies heavily on the Supreme Court of Kentucky's decision in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), in support of this contention. In *Ping*, the court was faced with the enforceability of an arbitration agreement executed by a nursing home resident's daughter vested with a durable power of attorney. *Id*. at 586. Ping's daughter was granted a general power-of-attorney and was authorized to perform certain functions relating to collection of money, management of accounts, sale of property, and decisions regarding medical care. *Id.* The agreement in *Ping* contained an optional arbitration agreement whereby any of Ping's claims against the nursing home were subject to binding arbitration. *Id.* at 588-89. Analyzing Kentucky agency law, the court held that Ping's daughter lacked the authority to bind her to an arbitration agreement under the general power-of-attorney. *Id*. at 590. In reaching this decision, the distinction between an optional versus a non-optional residency agreement was critical.

> On the one hand, where an agreement to arbitrate is presented to the patient as a condition of admission to the nursing home, courts have held that the authority incident to a health care durable power of attorney includes the authority to enter such an agreement. . . . On the other hand, where, as here, the arbitration agreement is not a condition of admission to the nursing home, but is an optional, collateral agreement, courts have held that authority to choose arbitration is not within the purview of a health-care agency, since in that circumstance agreeing to arbitrate is not a "health care" decision.

*Id.* at 593 (internal citations and quotation marks omitted).

Unlike the facts in *Ping*, Caudill was vested with "the full authority to act on [Holliday's] behalf in relation to all of [her] property and affairs." [Record No. 6-1] And there is a further critical distinction. Holliday's residency agreement contained the arbitration provision as part and parcel of a "condition of admission," rather than as a separate, optional agreement. [Record No. 1-1] Caudill's argument that the holding in *Ping* mandates a finding that the arbitration agreement here is unenforceable is unavailing.[3] *See Stacy*, 2014 U.S. Dist. LEXIS 84460, at *36-37. Instead, the arbitration agreement will be enforced. *See id.* (rejecting a similar argument in the same context); *Hanley*, 2014 U.S. Dist. LEXIS 42355 (enforcing a similar arbitration agreement).

### B. Interstate Commerce & Validity

The FAA extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice . . . subject to federal control. *Stacy*, 2014 U.S. Dist. LEXIS 84460, at *38 (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003)). Numerous other courts

---

[3] Because *Ping* is distinguishable from this case, the Court need not address the plaintiffs' argument that *Ping* is preempted by the FAA. [*See* Record No. 6-2, p. 9 (citing *Sout*, 228 F.3d at 716) (The FAA preempts state laws that are hostile to the purpose of the FAA); *see also* Record No. 7, pp. 11-

have found that similar nursing home residency agreements are contracts "evidencing a transaction involving commerce" pursuant to the FAA. *See Stacy*, 2014 U.S. Dist. LEXIS 84460, at *38-39; *see also Hanley*, 2014 U.S. Dist. LEXIS 42355, at *22-24; *GGNSC Vanceburg, LLC v. Taulbee,* No. 5:13-CV-71-KSF, 2013 U.S. Dist. LEXIS 110878, at *4 (E.D. Ky. Aug. 7, 2013); and *Warner*, 2013 U.S. Dist. LEXIS 178136, at *8. And with good reason. "The Supreme Court has interpreted the language 'involving commerce' in the FAA as signaling the broadest permissible exercise of Congress' Commerce Clause power." *Dowdy*, 2014 U.S. Dist. LEXIS 24285, at *31. The agreement here "is a component of a larger contract that evidences a transaction involving interstate commerce." *Stacy*, 2014 U.S. Dist. LEXIS 84460, at *39. Interstate commerce is interpreted broadly and healthcare is an economic activity that represents a general practice subject to federal control. *See Ping*, 376 S.W.3d at 589 (citing *Alafabco,* 539 U.S. at 56-57). Accordingly, Caudill's objection on this point is without merit.

Next, ignoring the fact that the arbitration agreement itself states that any claims that the agreement is unconscionable or void are themselves subject to arbitration, Caudill attacks the arbitration agreement on grounds of unconscionability and public policy. [Record No. 7, p. 15] These arguments "have been squarely rejected by numerous courts." *Stacy*, 2014 U.S. Dist. LEXIS 84460, at *26. The unconscionability doctrine "is directed against one-sided, oppressive and unfairly surprising contracts, and *not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain*." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341-41 (Ky. Ct. App. 2001) (emphasis added).

14.]

Caudill's arguments regarding unconscionability of the agreement attack arbitration at its core. Yet, these arguments ignore the "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Asplundh Tree*, 71 F.3d at 595.

Caudill also argues that the arbitration agreement is against the public policy of Kentucky. But the FAA "requires courts to enforce the bargain of the parties to arbitrate." *See Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201, 1204 (2012). Caudill also briefly states that the Court should permit discovery into the circumstances surrounding the execution of the agreement, without any indication of what discovery would accomplish. [Record No. 7, p. 15] Finally, Caudill contends that the arbitration agreement is unenforceable because the contract contains a limitation on liability that Caudill argues is unenforceable. However, even if that were true, any unenforceable provision within the agreement would be severable from the arbitration agreement itself. *See Stacy*, 2014 U.S. Dist. LEXIS 84460, at *31-32. The clauses here are not so intertwined with each to be un-severable. *See Francis v. Cute Suzie*, LLC, No. 3: 10-CV-00704, 2011 U.S. Dist. LEXIS 58840, *1 (W.D. Ky. June 2, 2011) (an arbitration clause is valid despite an accompanying limitation on liability because the limitation is severable in the event it is found unconscionable).

None of the proffered reasons excuse Caudill from his obligation to arbitrate. Instead, the Court finds that the agreement is valid and enforceable, and its broad terms clearly dictate that Caudill's claims are subject to arbitration. Caudill will be compelled to submit his

claims regarding Holliday's alleged substandard care to arbitration pursuant to the terms of the arbitration agreement.

## C. Injunctive Relief

The Sixth Circuit has held that a district court may enjoin state-court proceedings after compelling arbitration, and that activity does not violate the Anti-Injunction Act. *Great Earth*, 288 F.3d at 893. Although they are "a delicate matter," injunctions are sometimes appropriate to protect the final judgment of the Court on an issue. *See In re Arbitration Between Nuclear Elec. Ins. Ltd. and Cent. Power & Light Co.*, 926 F. Supp. 428, 436 (S.D.N.Y. 1996) ("The courts in this district have consistently held that a stay [of state-court proceedings], when issued subsequent to or in conjunction with an order compelling arbitration concerning the same subject matter as the state-court proceeding, falls within one or both of [the aid of jurisdiction exception or the relitigation exception]."); *accord TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998) ("When a federal court has ordered arbitration, a stay of the state-court action may be necessary to insure that the federal court has the opportunity to pass on the validity of the arbitration award."). An injunction in this context falls within the exception because it is "necessary . . . to protect or effectuate [the Court's] judgments." *Great Earth*, 288 F.3d at 893.

Although "it is doubtful that a state court would proceed where another court of proper jurisdiction has ruled on the validity of an arbitration agreement," the plaintiffs here seek, and are entitled to, this assurance. *Hanley*, 2014 U.S. Dist. LEXIS 42355, at *27-28. Having found that the parties entered into a binding arbitration agreement covering the scope of Caudill's claims against these three state court defendants, an injunction will effectuate the

Court's determination. Accordingly, the Court will enjoin Caudill from pursuing his claims against the plaintiffs in his parallel state court case.

V.

For the foregoing reasons and analysis, it is hereby

**ORDERED** as follows:

1. Defendant Paul S. Caudill's motion to dismiss [Record No. 4] is **DENIED**.

2. Plaintiffs Brookdale Senior Living, Inc., BLC Lexington SNF, LLC, and American Retirement Corporation's motion to compel arbitration and motion to enjoin the defendant [Record No. 6] are **GRANTED**.

3. Pursuant to the Federal Arbitration Act, Defendant Paul S. Caudill is **COMPELLED** to submit his claims to arbitration under the terms of the arbitration agreement. Further, Paul S. Caudill is **ENJOINED** from pursuing his claims in the parallel state-court action.

4. This matter is **STAYED** until the ordered arbitration is concluded. The parties are directed to submit a joint status report regarding the progress of arbitration by **December 8, 2014**.

This 10th day of July, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge